STATE of Wisconsin, Plaintiff-Appellant-Cross Respondent-Petitioner,

v.

Woodrow A. DeSMIDT, Defendant-Respondent-Cross Appellant.

Supreme Court

*No. 88-1356-CR. Argued January 26, 1990.—Decided May 10, 1990.*

(Also reported in 454 N.W.2d 780.)

For the plaintiff-appellant-cross respondent-petitioner the cause was argued by *Barry M. Levenson,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-respondent-cross appellant there was a brief by *Steven L. Miller* and *Zuidmulder, Gazeley & Appel, S.C.,* Green Bay, and oral argument by *Mr. Miller.*

DAY, J. This is a review of a decision of the court of appeals, *State v. DeSmidt,* 151 Wis. 2d 324, 444 N.W.2d 420 (Ct. App. 1989), which affirmed the order of the circuit court for Brown county, the Honorable John P. Hoffmann, Judge, suppressing all evidence, except Medicaid provider handbooks, seized in a warrant-authorized search of Dr. DeSmidt's dental offices. The first question is whether the search of Dr. DeSmidt's dental offices and seizure of his dental and business records violated either Art. I, Sec. 11 of the Wisconsin Constitution or the Fourth Amendment of the United States Constitution. If the search and seizure was constitutionally infirm, the second question is whether this court should adopt the "good faith" exception to the exclusionary rule established by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897 (1984). We conclude the search and seizure was constitu-

tional and reverse. We therefore do not reach the *Leon* issue.

An investigation of Dr. DeSmidt's dental practice in Green Bay arose in late August of 1985 after a former employee of Dr. DeSmidt's, Ms. Harriet Berger, contacted the Wisconsin Department of Justice alleging that Dr. DeSmidt was submitting fraudulent Medicaid and insurance claim forms. The matter was investigated by Mr. John P. Isely, an investigator with the Medicaid Fraud Control Unit of the Wisconsin Department of Justice. Investigator Isely interviewed Ms. Berger on several occasions. On September 24, 1985, Investigator Isely filed a Complaint for Search Warrant, drafted by an Assistant Attorney General, and a supporting affidavit detailing the interviews with Ms. Berger and her allegations. The affidavit, which is appended in full to the court of appeals' decision, provided in pertinent part that Ms. Berger had been employed by Dr. DeSmidt from early June of 1985 through mid-August of that same year. Ms. Berger's duties included preparing third party claim forms, and she had access to all of Dr. DeSmidt's business records and files. Ms. Berger alleged that Dr. DeSmidt was engaged in a series of illegal activities. Ms. Berger alleged and gave specific examples of claim forms that had been filed seeking Medicaid assistance for services performed on one date when patient records and other documents disclosed that in fact the services had been performed on another date when the patient was ineligible to receive Medicaid assistance. Ms. Berger alleged that similar practices were being utilized in filing claim forms with private insurance companies and gave specific examples of such cases. Ms. Berger also stated that Dr. DeSmidt adjusted some bills to private insurance companies so as to receive his full customary fee for a particular service even though the policy pro-

vided coverage for only a percentage of the fee. Ms. Berger also alleged that Dr. DeSmidt routinely submitted Medicaid claim forms for periapical x-rays when in fact bite wing x-rays had been performed. Bite wing x-rays are only covered by Medicaid assistance if authorization is received prior to treatment. Ms. Berger stated she believed that Dr. DeSmidt's associate, Dr. McClain, was being trained to conduct her business in a similar illegal fashion. Ms. Berger alleged that Dr. McClain had stated to her that Medicaid eligibility dates presented no problem inasmuch as the service could be backdated on the claim forms to fall within the eligibility period. Ms. Berger stated that an examination of the business records of Dr. DeSmidt and Dr. McClain would disclose other instances in which claim forms containing false information were filed for Medicaid assistance or with private insurance companies. Ms. Berger stated that when she confronted Dr. DeSmidt with the fact that he was engaging in activities which were illegal, he merely smiled and said that it was his office. Shortly after this confrontation, Dr. DeSmidt terminated Ms. Berger's employment.

A search warrant was issued on September 25, 1985, by the circuit court for Brown county, the Honorable Alexander R. Grant, Judge. The warrant authorized the search for and seizure of the following items:

> Patient charts and dental records, recording, among other things, services actually performed, dates of service; x-ray negatives in envelopes attached to the individual patient dental records; business records including but not limited to, appointment book or books, copies of patient statements, receipt book or books, fee schedule, ledgers, daily business summaries, remittance forms; Medicaid provider handbooks.

On September 25, 1985, Investigator Isely and three other Wisconsin Department of Justice agents entered Dr. DeSmidt's dental offices in Green Bay to execute the search warrant. Dr. DeSmidt was served with a copy of the search warrant, but not a copy of the affidavit. The search lasted approximately two hours and ten minutes. Investigator Isely directed the agents to seize all business records and all patient files dated from 1979. While the other agents were conducting the search, Investigator Isely questioned Dr. DeSmidt in his office. The questioning ceased after approximately one hour when Dr. DeSmidt asked to speak to an attorney. The agents seized twenty-two boxes of materials, including all "active patient" files, financial records, accounting ledgers, business and personal bank statements, appointment books, day sheets recording the daily work performed, and payroll and expense check stubs. Dr. DeSmidt was allowed to retain blank business checks and to photocopy the charts of those patients expected in the next day as well as several days of the appointment book. Investigator Isely and the agents transported the materials to their offices in Madison.

In an amended complaint filed on July 3, 1986, the State charged Dr. DeSmidt with nine counts of medical assistance fraud, in violation of sec. 49.49(1)(a), Stats. (1983–84), and four counts of insurance fraud, in violation of sec. 943.395, Stats. (1983–84). A preliminary examination was held and on January 23, 1987, the circuit court bound Dr. DeSmidt over for trial. On February 23, 1987, the State filed an information against Dr. DeSmidt charging eleven counts of medical assistance fraud, in violation of sec. 49.49(1)(a).

On March 31, 1987, Dr. DeSmidt moved to suppress all evidence seized during the search of his offices, alleging the search and seizure violated Art. I, Sec. 11 of the

Wisconsin Constitution and the Fourth Amendment of the United States Constitution because the warrant was issued without probable cause, the warrant was not sufficiently particular in describing the items to be seized, and the execution of the search was overbroad. On March 1, 1988, the circuit court issued a memorandum decision holding that the warrant was not sufficiently particular, except for the description of Medicaid provider handbooks. The circuit court also found that there was not probable cause to support seizing all of Dr. DeSmidt's records. On May 31, 1988, the circuit court entered an order suppressing all evidence obtained in the search, with the exception of the Medicaid provider handbooks.

The State appealed the circuit court's order pursuant to sec. 974.05(1)(d)2, Stats. (1983–84). A majority of the court of appeals concluded that the warrant described the items to be seized, which amounted to all of Dr. DeSmidt's dental and business records, with sufficient particularity. *DeSmidt,* 151 Wis. 2d at 330. The majority held, however, that there was not probable cause to support seizing all of Dr. DeSmidt's records. *Id.* at 333. The dissent in the court of appeals, noting that the affidavit made reference to Ms. Berger's allegations that filing false claim forms was a "common practice" and "done routinely" at Dr. DeSmidt's offices, disagreed that probable cause to support seizing all of Dr. DeSmidt's records was lacking. *Id.* at 341–42 (Myse, J., dissenting). The dissent reasoned:

> [Ms. Berger's] allegations clearly indicate that a pattern of fraudulent practice existed in the office at the time Berger started her employment. [Because she was not aware of the exact date this practice commenced], it was necessary for the state to obtain sufficient records to demonstrate the difference between

the amounts billed depending on the method of payment and the way claims were processed in order to prove the alleged fraudulent practice. Because no accurate starting date of this practice was available to the state, they were unable to limit the seizure of· records to a specific time period.

*Id.* at 342.

The State petitioned this court for review, which was granted. We conclude that because there was probable cause to believe Dr. DeSmidt's dental practice was "permeated with fraud," the search for and seizure of all of Dr. DeSmidt's dental and business records was reasonable and therefore constitutional, and accordingly we reverse.

As this court has previously recognized, Art. I, Sec. 11 of the Wisconsin Constitution and the Fourth Amendment of the United States Constitution are substantially the same. *See State v. Anderson,* 138 Wis. 2d 451, 461, 406 N.W.2d 398 (1987); *State v. Fry,* 131 Wis. 2d 153, 172, 388 N.W.2d 565 (1986), *cert. denied,* 479 U.S. 989 (1986). Art. I, Sec. 11 provides:

> **Searches and seizures** . . . The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The fourth amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, sup-

ported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Where the state and federal constitutional provisions at issue are virtually identical, this court has traditionally interpreted the state provision consistent with the protections afforded its federal counterpart. *State v. Tompkins,* 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988). This has been particularly true with respect to the provisions at issue here. This court has held on numerous occasions that the standards and principles surrounding the fourth amendment are generally applicable to the construction of Art. I, Sec. 11. *See, e.g., Tompkins,* 144 Wis. 2d at 131–38; *Anderson,* 138 Wis. 2d at 461; *Fry,* 131 Wis. 2d at 172–74; *State v. Boggess,* 115 Wis. 2d 443, 448 n.8, 340 N.W.2d 516 (1983); *State v. Beal,* 40 Wis. 2d 607, 612, 162 N.W.2d 640 (1968); *State v. Paszek,* 50 Wis. 2d 619, 624, 184 N.W.2d 836 (1971).

The basic purpose of the prohibition against unreasonable searches and seizures is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. *Boggess,* 115 Wis. 2d at 448–49. The central inquiry under the fourth amendment is the reasonableness of the governmental intrusion in light of all of the circumstances. *State v. Wilks,* 121 Wis. 2d 93, 100, 358 N.W.2d 273 (1984), *cert. denied,* 471 U.S. 1067 (1985). Because the particularity and probable cause requirements of the fourth amendment are the only protections a person has against a general search of his or her papers, somewhat closer scrutiny has been given to review of warrants authorizing the search for and seizure of documents, especially where the rights of third parties may be involved. *See Andresen v. Maryland,* 427 U.S.

130

463, 482 n.11 (1976); *United States v. Washington,* 797 F.2d 1461, 1468 (9th Cir. 1986); *Klitzman, Klitzman .& Gallagher v. Krut,* 744 F.2d 955, 960 (3rd Cir. 1984); *United States v. Abrams,* 615 F.2d 541, 547 (1st Cir. 1980).

On review in this court, Dr. DeSmidt no longer contends that the warrant was insufficiently particular in describing the items to be seized and therefore granted too much discretion to the agents executing the warrant. The parties agree that the warrant particularly authorized the search for and seizure of all of Dr. DeSmidt's dental and business records. Dr. DeSmidt contends only that there was insufficient probable cause to support the seizing of all of his dental and business records and that the execution of the warrant was unreasonable.

A search warrant may only issue on the basis of a finding of probable cause by a "neutral and detached magistrate." *United States v. United States District Court,* 407 U.S. 297, 318 (1972); *Ritacca v. Kenosha County Court,* 91 Wis. 2d 72, 77, 280 N.W.2d 751 (1979). Whether probable cause exists is determined by analyzing the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* This court has stated that the warrant-issuing judge must be apprised of "sufficient facts to excite an honest belief in a reasonable mind that the objects sought are

linked with the commission of a crime, and that the objects sought will be found in the place to be searched." *State v. Starke,* 81 Wis. 2d 399, 408, 260 N.W.2d 739 (1978). "The quantum of evidence necessary to support a finding of probable cause for a search warrant is less than that required for a conviction or for bindover following a preliminary examination." *Ritacca,* 91 Wis. 2d at 77; *see also Starke,* 81 Wis. 2d at 411. "Probable cause [is] not susceptible of 'stringently mechanical definitions.' What is required is more than a possibility, but not a probability, that the conclusion is more likely than not. This court has always stressed the reasonableness factor." *Tompkins,* 144 Wis. 2d at 125. A finding of probable cause under federal standards will generally result in a finding of probable cause under state standards. *Beal,* 40 Wis. 2d at 612.

In reviewing whether probable cause existed for the issuance of a search warrant, we are confined to the record that was before the warrant-issuing judge. *State v. Princess Cinema of Milwaukee,* 96 Wis. 2d 646, 649, 292 N.W.2d 807 (1980). The person challenging the warrant bears the burden of demonstrating that the evidence before the warrant-issuing judge was clearly insufficient. *Ritacca,* 91 Wis. 2d at 78. Review of the warrant-issuing judge's finding of probable cause is not *de novo. Gates,* 462 U.S. at 236. Rather, great deference should be given to the warrant-issuing judge's determination. *Id.; Leon,* 468 U.S. at 914.

> 'A grudging or negative attitude by reviewing courts toward warrants' . . . is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe

than otherwise may be the case . . . A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.

*Massachusetts v. Upton,* 466 U.S. 727, 733 (1984) (quoting *United States · v. Ventresca,* 380 U.S. 102, 108 (1965)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that the probable cause existed." *Gates,* 462 U.S. at 238–39 (quoting *Jones v. United States,* 362 U.S. 257, 271 (1960)); *see also Anderson,* 138 Wis. 2d at 469. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants." *Ventresca,* 380 U.S. at 109.

■■■

At issue in this case is whether the breadth of the warrant, the search for and seizure of all of Dr. DeSmidt's dental and business records, was supported by probable cause. "The search and seizure of large quantities of material is justified if the material is within the scope of probable cause underlying the warrant." *United States v. Hayes,* 794 F.2d 1348, 1355 (9th Cir. 1986), *cert. denied,* 479 U.S. 1086 (1987); *see also United States v. American Investors of Pittsburgh, Inc.,* 879 F.2d 1087, 1106 (3rd Cir. 1989), *cert. denied.* 110 S. Ct. 368 (1959). The United States Supreme Court has recognized that, in cases involving a complex scheme to defraud, a criminal investigation may require piecing together, like a jigsaw puzzle, a number of bits of evidence which if taken alone might show comparatively little. *Andresen,* 427 U.S. at 481 n.10. Where there is probable cause to believe that there exists a pervasive

scheme to defraud, all the records of a business may be seized. *United States v. Brien,* 617 F.2d 299, 309 (1st Cir. 1980), *cert. denied,* 446 U.S. 919 (1980). "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Andresen,* 427 U.S. at 481 n.10.

We conclude that here there was a substantial basis for the warrant-issuing judge's determination that seizure of all of Dr. DeSmidt's records was supported by probable cause. The record at the time the warrant was issued consisted solely of Investigator Isely's affidavit in support of the warrant application. The affidavit was based upon the allegations of Ms. Berger. "The assertions in an affidavit seeking a search warrant may be based on hearsay provided the affiant indicates that the informant is credible and reliable." *Bast v. State,* 87 Wis. 2d 689, 694, 275 N.W.2d 682 (1979). Ms. Berger's credibility or reliability is not challenged by Dr. DeSmidt, and in any event, Investigator Isely's affidavit clearly supports a finding that Ms. Berger was a credible and reliable informant. The affidavit set forth that Ms. Berger was a past employee of Dr. DeSmidt, and that in that capacity she had access to Dr. DeSmidt's dental and business records and her duties directly involved preparing third party claim forms. The affidavit further set forth that through an examination of government records, Investigator Isely confirmed much of the information Ms. Berger provided concerning specific claims. Investigator Isely also stated in the affidavit his belief that Ms. Berger was correct in asserting that false claims had been filed. In determining whether probable cause

134

exists, the conclusions of an agent based on his experience with investigations may be considered. *United States v. Crozier,* 777 F.2d 1376, 1380 (9th Cir. 1985).

We note at the outset that there is no doubt the affidavit on its face established probable cause to search for and seize at least those dental and business records of Dr. DeSmidt relating to the specific instances of fraud alleged by Ms. Berger. Dr. DeSmidt argues that the scope of the warrant should have been limited to those specific instances. We disagree. To limit the warrant to the search for and seizure of solely the specific instances of fraud alleged by Ms. Berger would unreasonably restrict and frustrate the State's investigation. *Cf. Starke,* 81 Wis. 2d at 416. "[A] magistrate is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts." *United States v. Hershenow,* 680 F.2d 847, 852 (1st Cir. 1982); *see also Bast,* 87 Wis. 2d at 693. "The Fourth Amendment does not deny law enforcement officers the support of the usual inferences . . . reasonable men draw from the evidence, . . . it requires [only] that such inferences be drawn by a neutral and detached magistrate." *Starke,* 81 Wis. 2d at 409. The logical inference from the information provided by Ms. Berger was that the specific instances of fraud she referred to were only the "tip of the iceberg." *United States v. Offices Known as 50 State Distrib.,* 708 F.2d 1371, 1374–75 (9th Cir. 1983), *cert. denied,* 465 U.S. 1021 (1984). Investigator Isely's affidavit contained allegations by Ms. Berger that Dr. DeSmidt was "engaged in a series of illegal activities;" that Dr. DeSmidt "routinely" and as a "common practice" billed bite wing x-rays as periapical x-rays; that Dr. DeSmidt's fraudulent practices were not limited to Medicaid claims, but also included filing false claim

135

forms with private insurance companies; that in addition to the particular fraudulent claims she identified, other false claims had been filed. Ms. Berger further alleged that Dr. DeSmidt was "training" his associate to conduct her practice in a similar, illegal fashion. We conclude that the affidavit supported the inference of a probability of fraud throughout Dr. DeSmidt's dental practice. *Compare United States v. Henson,* 848 F.2d 1374, 1383 (6th Cir. 1988), *cert. denied,* 109 S. Ct. 784 (1989); *United States v. Diaz,* 841 F.2d 1, 5 (1st Cir. 1988); *In re Impounded Case (Law Firm),* 840 F.2d 196, 201 (3rd Cir. 1988); *United States v. Sawyer,* 799 F.2d 1494, 1508 (11th Cir. 1986), *cert. denied,* 479 U.S. 1069 (1987); *Hayes,* 794 F.2d at 1356; *Hershenow,* 680 F.2d at 852-53; *United States v. Hoskins,* 639 F. Supp. 512, 516-17 (W.D.N.Y. 1986), *aff'd.,* 875 F.2d 308 (2nd Cir. 1989); *Hearn v. Internal Revenue Agents,* 597 F. Supp. 966, 970 (N.D. Texas 1984); *State v. Hughes,* 433 So. 2d 88, 93 (La. 1983).

Dr. DeSmidt argues that seizure of all of a business' records is only permissible where the defendant's entire business is "illegitimate." While we recognize the majority of the reported decisions in which the seizure of all of the defendant's records has been allowed have involved illegitimate businesses, we disagree that the character of the business is the determining factor in assessing the reasonableness of the seizure. The magnitude of a search, in and of itself, is insufficient to establish a constitutional violation. *United States v. Santarelli,* 778 F.2d 609, 615 (11th Cir. 1985). Where a warrant authorizes the seizure of records relevant to a particular crime and all of a business' records fall into that category, all of the records may lawfully be seized and removed from the premises irrespective of the nature of the business. *See*

*id.* at 616; *Williams v. Kunze,* 806 F.2d 594, 598 (5th Cir. 1986); *Sawyer,* 799 F.2d at 1508.

Dr. DeSmidt further argues that the warrant was unreasonable because it was not limited in time to dental and business records relating only to the duration of Ms. Berger's employment. The observations of a ten or eleven week employee cannot, Dr. DeSmidt asserts, lead to a reasonable belief that Dr. DeSmidt's fifteen year practice was "permeated with fraud." It was upon this basis that the majority in the court of appeals, relying upon dicta in *Abrams,* concluded that the warrant lacked probable cause.

In *Abrams,* three former employees of the defendants informed the Department of Health, Education and Welfare that the defendants, who were physicians, had filed false Medicare claim forms. The former employees alleged that claim forms had been submitted to Medicare billing for laboratory tests never actually performed. An investigation ensued and a warrant was obtained to search the defendants' offices. The warrant broadly authorized the search for and seizure of "certain business and billing and medical records of patients of [the defendants] which show actual medical services performed and fraudulent services claimed to have been performed in a scheme to defraud the United States and to submit false medicare and medicaid claims for payment . . ." *Id.,* 615 F.2d at 542. The district court suppressed the evidence seized in the search and the court of appeals affirmed on the ground the warrant failed to meet the constitutional requirement of particularity. *Id.* at 543. The court of appeals rejected the government's argument that the warrant authorized the seizure of all of the defendants' records, concluding that the supporting affidavit failed to support an inference of pervasive

137

fraud and should have included a time limitation. *Id.* at 544 n.7, 545. The court of appeals then went on to make the following "observation":

> [I]f an affidavit contains an averment by an employee that fraudulent practices were regularly pursued during his or her employment, and the term of such employment is set forth, the warrant could authorize the seizure of all records of Medicare and Medicaid services billed and purportedly performed *during the period.*

*Id.* at 545 (emphasis added). The concurrence disagreed:

> I think my brothers are a bit narrow in their view of the relevant time frame. The fact that a former employee indicates that certain fraudulent practices are being regularly followed during the period of his or her employ might, I think, depending on the circumstances, supply probable cause to believe that the fraud continued for a reasonable time in the future. I think the same sort of analysis could also be applied in regards to the seizure of records dating prior to the time of the employee's tenure.

*Id.* at 550 n.3 (Campbell, J., concurring). We conclude the concurring opinion states the proper approach. *See United States v. Zanche,* 541 F. Supp. 207, 210 (W.D.N.Y. 1982), and cases cited therein. In a case of this nature, whether the search and seizure should be limited to records relating to a specified time period is certainly always a paramount consideration. But whether a search and seizure is unreasonable and therefore unconstitutional due to the lack of a time limitation is dependent upon the particular facts of each case. *See Sawyer,* 799 F.2d at 1509; *VonderAhe v. Howland,* 508 F.2d 364, 369 (9th Cir. 1975); *Callaway,* 106 Wis. 2d at 511-12. Under the facts of this case, we conclude the

138

lack of a time limitation was not unreasonable. *Compare Hughes,* 433 So. 2d 88. Unlike *Abrams,* the affidavit here contained specific allegations that the filing of fraudulent claim forms was a "common practice" performed "routinely" at Dr. DeSmidt's offices, and that this fraudulent practice was not limited to Medicaid claim forms but also private insurance company claim forms. In addition, the affidavit here contained an allegation that Dr. DeSmidt was "training" his associate to submit false claim forms, another allegation not present in *Abrams,* which greatly supports the inference that Dr. DeSmidt's entire dental practice was "permeated with fraud." While this is a close case, given our deferential standard of review and the United States Supreme Court's explicit directive that the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to warrants, we conclude there was a substantial basis supporting the warrant-issuing judge's finding of probable cause. *Compare Hayes,* 794 F.2d at 1356. Analogous to our holding here, the court in *Hayes* held that fifty-eight known cases of the defendant illegally prescribing Schedule II drugs in violation of the Controlled Substances Act could fairly be considered as representative of more pervasive violations. *Id.*

Dr. DeSmidt next contends that the execution of the warrant was so unreasonable that suppression of the evidence seized in the search is justified. Because it concluded the warrant lacked probable cause, the court of appeals did not reach this issue.

A search reasonable at its inception may later become unreasonable in scope. *See United States v. Heldt,* 668 F.2d 1238, 1256 (D.C. Cir. 1981), *cert. denied,* 102 S. Ct. 1971 (1982); *Wilks,* 121 Wis. 2d at 200. "Claims that otherwise reasonable searches have been

139

conducted in an unconstitutionally unreasonable manner must be judged under the facts and circumstances of each case." *United States v. Penn,* 647 F.2d 876, 883 (9th Cir. 1980), *cert. denied,* 449 U.S. 903 (1980). In determining the reasonableness of the execution of a warrant, a reviewing court must consider whether the scope of the search and seizure was reasonably related to the circumstances which justified the intrusion in the first place. *Wilks,* 121 Wis. 2d at 100. "[T]he need to strictly limit the scope of the search is particularly acute where . . . the warrant authorizes the seizure of documents." *Washington,* 797 F.2d at 1468.

Dr. DeSmidt first argues the execution of the warrant was unreasonable because the State examined numerous files he alleges were not suspected of containing fraudulent documents. We fail to see the basis for Dr. DeSmidt's argument in view of his abandoning the contention that the warrant did not satisfy the particularity requirement. In any event, because we conclude the affidavit established probable cause to believe Dr. DeSmidt's dental practice was "permeated with fraud" and that therefore the search and seizure of all his dental and business records was justified, Dr. DeSmidt's argument must fail. Where probable cause supports the search for and seizure of all of the records of a business, a warrant authorizing the seizure of all such records and describing them in generic terms is sufficient to meet the particularity requirement. *See Kunze,* 806 F.2d at 598; *Brien,* 617 F.2d at 309; *Hershenow,* 680 F.2d at 852. *Abrams,* upon which Dr. DeSmidt relies, is distinguishable because there the search for and seizure of all of the defendants' records was not supported by probable cause. *See Abrams,* 615 F.2d at 548–49.

Dr. DeSmidt, relying upon *Klitzman, Klitzman & Gallagher* and *VonderAhe,* lastly argues that the execution of the warrant was unreasonable due to the effect of the seizure, particularly in terms of its length, upon Dr. DeSmidt's professional livelihood and his patients' welfare. Subsequent to the seizure, Dr. DeSmidt made a formal request to the State to return his dental and business records or at least copies of them. The State agreed to return parts of the patient files on an "as needed" basis. Dr. DeSmidt alleges the State failed to comply with that agreement, however, and often either did not send the needed portions of the records or failed to respond at all. After the State filed the complaint, Dr. DeSmidt filed a motion seeking return of the documents. *See* sec. 968.20, Stats. (1983–84). On August 1, 1986, the circuit court for Brown county, the Honorable William J. Duffy, Judge, issued a written order directing the State to return to Dr. DeSmidt all original records the State did not intend to use as evidence at trial and to return copies of all records the State needed. Dr. DeSmidt alleges that when the State returned the records on August 4, 1986, many of the records were incomplete and many were unaccounted for. Dr. DeSmidt subsequently moved to have the State directly comply with the August 1, 1986, order, but Dr. DeSmidt alleges that although the State returned some additional records, there were still portions of records and entire records missing.

We disagree that the State's alleged misconduct in returning Dr. DeSmidt's dental and business records requires suppression of the evidence. Just as the exercise of discretion by officers executing a warrant cannot rehabilitate an otherwise defective warrant, *see United States District Court,* 407 U.S. at 317, in this case the

subsequent alleged misconduct of the State cannot "reach back" to invalidate the lawful search and seizure here. The return of property properly seized can be obtained by court order pursuant to sec. 968.20, Stats. If the court issues such an order and there is non-compliance, an action for contempt may lie. *See* secs. 785.01(1)(b) and (d), Stats. 1983–84. Moreover, if the State was negligent in its handling of Dr. DeSmidt's property, he may seek a civil remedy. Nor do we find any merit in Dr. DeSmidt's complaint that the State failed to notify any of Dr. DeSmidt's patients that their records were being examined. While we are mindful of and sensitive to the rights of third parties involved in cases such as this, we are aware of no authority, and Dr. DeSmidt cites none, that requires the State in circumstances such as this to notify the third parties involved that their records are being examined. The rights of third parties are essentially derivative from those of the person being searched, and are protected by the constitutional prohibition against unreasonable searches and seizures. Unlike the circumstances here, in neither case relied upon by Dr. DeSmidt was there probable cause to believe the defendant's entire business was "permeated with fraud." *See Klitzman, Klitzman & Gallagher,* 744 F.2d at 960; *VonderAhe,* 508 F.2d at 369–70.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (dissenting). For the warrant to seize "all" the patients records over an unlimited time period to be valid, the affidavit must provide a substantial basis for the inference that Dr. DeSmidt's entire dental practice was "permeated with fraud" or that seizure of all records was necessary to

show the defendant's illegal activities. Both the circuit court and the court of appeals determined that the affidavit was not adequate.

I agree with the court of appeals: "The presence of criminal practices during the summer of 1985 does not give rise to the reasonable inference that DeSmidt was engaged in a lifetime of wrongful conduct . . .. The informant in this case made no claim to know the contents of files outside her employment period [of ten or eleven weeks] . . .. Even if the fraud is reasonably inferred to precede [the informant's] employment, there is nothing in the affidavit to suggest it went on for many years." *State v. DeSmidt,* 151 Wis. 2d 324, 332–33, 444 N.W.2d 420 (Ct. App. 1989). I therefore dissent.

While courts have upheld search warrants permitting the search and seizure of "all" business records, they have done so in very limited circumstances, namely when there is substantial evidence that (1) the entire business can be characterized as illegal, *e.g.,* "boiler room" stock sales operations, mail or wire fraud operations, extortion plots, and massive fraudulent schemes; or (2) the business is legitimate but illegal activities are pervasive. When the business is legitimate and the affidavit does not show pervasive fraud, the warrant to search and seize all records is invalid. In these instances the warrant should be limited to the documents relevant to the segregable fraud. *See, e.g., In re the Application of Lafayette Academy,* 610 F.2d 1 (1st Cir. 1979).

None of the cases the majority opinion cites supports its holding that in the face of a legitimate business and no factual documentation of extensive fraud, a magistrate (judge) may authorize the seizure of all business and patient records.*

---

*The majority opinion relies primarily on three cases to support its rule of law that when all business records are relevant to a

In this case the affidavit does not suggest that DeSmidt operated his dental practice solely for criminal

particular crime, all the records of a business (whether it be a legitimate business or not) may be seized. None is analogous to the instant case.

*United States v. Santarelli,* 778 F.2d 609, 615 (11th Cir. 1985), involved a loansharking business, that included the use of fire-arms and violence to enforce repayment of loans. The affidavit was based on information from one of the borrowers detailing a series of loans he had taken with the defendant, from other FBI agents, and from a taped telephone conversation between the borrower and the defendant. The court upheld the search warrant because the affidavit showed probable cause to believe that the documents were part of an illicit extortionate credit operation.

In *Williams v. Kunze,* 806 F.2d 594, 598 (5th Cir. 1986), the Criminal Investigation Division of the Internal Revenue Service was conducting an investigation of several allegedly fraudulent tax shelter schemes organized and operated from the Caymen Islands by United States Tax Planning Services, Limited, and a licensee. After an extensive investigation of the licensee, including several visits by undercover agents posing as clients, an IRS investigator sought a search warrant. The application was supported by the IRS investigator's affidavit and the affidavit of a Special Agent, who had previously conducted a nationwide investigation of USTPS. The court upheld the search because the affidavits showed there was probable cause to believe the entire business was merely a scheme to defraud or that all the records of the business are likely to constitute evidence of tax evasion.

In *United States v. Sawyer,* 799 F.2d 1494 (11th Cir. 1986), *cert. denied,* 479 U.S. 1069 (1987), the court considered a "boiler room" sales operation. Affidavits submitted by the investigators described in detail twenty five customer transactions and repeated instances of misrepresentation or concealment of material facts and other fraudulent conduct in which the defendants engaged. The affidavits also identified a number of sales persons who engaged in deceptive sales techniques and enumerated many unauthorized transfers of customer funds to generated commis-

purposes. Nor does the affidavit allege observation of wholesale fraud. In the absence of any reported complaints against DeSmidt by patients, other employees or any informants and in the absence intensive police or other agency investigations corroborating pervasive illegal activities, the majority opinion parses words and phrases in the affidavit, to find evidence of endemic fraud. Allegations using conclusory words like "routine" or "commonplace" are no substitute for the evidence or documentation necessary to establish probable cause.

The majority opinion's attempts to distinguish *United States v. Abrams,* 615 F.2d 541 (1st Cir. 1980) are unconvincing. In *Abrams,* the court considered an affidavit presenting information obtained from three former employees alleging approximately 50 incidents of false claims for Medicare payments. The *Abrams* court struck down the warrant, concluding that there was no support in the affidavit providing probable cause to believe all of the patients' billings were inflated. See Ringel, *Searches and Seizures, Arrests and Confessions* sec. 5.6(c), pp. 5–39 through 5–45.

The majority opinion relies on a footnote to Judge Campbell's concurring opinion in *Abrams,* but the language quoted is taken out of context. Judge Campbell joined his colleagues on the *Abrams* court in concluding that the warrant to search all the doctor's records over an *unlimited* time period was unconstitutional. Judge Campbell would not have limited the time period as narrowly as the majority opinion's dicta suggested. Judge Campbell wrote in *Abrams:*

---

sions. The court upheld the warrants, concluding that the affidavits showed widespread efforts to defraud customers through a variety of misleading disclosures and representations.

145

. . .. I am not satisfied that the general statement [in the affidavit] measures up to the particularity expressly required by the Fourth Amendment. At least, this is so where the search and seizure is directed at medical files, and not at files of a substantially or wholly illegal enterprise, involving privacy interests of a lessor character. The government, moreover, should have been able to do better. Surely its records reflected the names of patients for whom Dr. Abrams had obtained Medicare-Medicaid reimbursement, and in what amounts. Could it not have named these patients in the warrant and directed the seizure of evidence of the services performed with respect to these individuals? At [the] very least, the relevant time frame should have been indicated.[3]

---

[3] My brothers suggest that 'if an affidavit contains an averment by an employee that fraudulent practice were regularly pursued during his or her employment, and the term of such employment is set forth, the warrant could authorize the seizure of all records of Medicare and Medicaid services billed and purportedly performed *during that period.*' (Emphasis added.) I think my brothers are a bit narrow in their view of the relevant time frame. The fact that a former employee indicates that certain fraudulent practices are being regularly followed during the period of his or her employ might, I think, depending upon the circumstances, supply probable cause to believe that the fraud continued for a reasonable time in the future. I think the same sort of analysis could also be applied in regards to the seizure of records dating prior to the time of the employee's tenure.

When viewed in context, Judge Campbell's statements do not support the majority opinion in this case; they support the position that the warrant in this case is unconstitutional. The affidavit in this case fails to adequately identify any rational nexus between the time of the informant's employment at DeSmidt's office and prior acts of medicaid or insurance fraud. As in *Abrams,* the search warrant failed to support the inference of a

probability of fraud for the entire time Dr. DeSmidt practiced dentistry.

I conclude that a warrant authorizing the search and seizure of "all" patient and business files without limitations on the nature of the records or the period of time amounts in this case to the government's wholesale rummaging through documents prohibited by the fourth amendment.