COURT OF APPEALS
DECISION
DATED AND FILED

February 28, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP485-CR**

Cir. Ct. No. **2019CF121**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BROOKE K. EDER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Barron County: JAMES C. BABLER, Judge. *Reversed and cause remanded for further proceedings*.

¶1 HRUZ, J.[1] Brooke Eder appeals from a judgment convicting her of possession of amphetamine. Eder contends that the circuit court erred by denying

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

her motions to suppress evidence that was found during a search of her apartment. The search in question was conducted pursuant to a warrant. The search warrant affidavit, however, relied on evidence that was discovered during a prior warrantless search of the basement of Eder's apartment building. The warrantless search of the basement followed an initial search of Eder's apartment, which was conducted pursuant to a warrant that authorized police to enter the apartment to find a man named Joshua Estes.

¶2      In her first motion to suppress, Eder argued that the initial warrant to search her apartment was not supported by probable cause. She further argued that the evidence discovered during the execution of the second warrant derived from the initial illegal search and should therefore be suppressed as fruit of the poisonous tree. In her second suppression motion, Eder argued that even if the initial search warrant was supported by probable cause, the subsequent warrantless search of the building's basement violated the Fourth Amendment. Because the second warrant relied on evidence discovered during the warrantless search of the basement, Eder argued that the evidence discovered during the execution of the second warrant should be suppressed.

¶3      The circuit court denied Eder's first suppression motion, concluding that there was probable cause for the initial warrant to search her apartment. The court denied Eder's second suppression motion on the grounds that Eder lacked standing to challenge the warrantless search of her apartment building's basement. As such, the court did not address the merits of Eder's second suppression motion.

¶4      We agree with the circuit court that the initial warrant to search Eder's apartment was supported by probable cause. We conclude, however, that the court erred by determining that Eder lacked standing to challenge the

warrantless search of her apartment building's basement. Accordingly, the court erred by denying Eder's second suppression motion based on Eder's alleged lack of standing. We therefore reverse Eder's judgment of conviction and remand for further proceedings on the merits of Eder's second suppression motion.

## BACKGROUND

¶5    On April 24, 2019, Detective Michael Carroll of the Barron County Sherriff's Department applied for and received a warrant to search an upper level apartment in an apartment building in the Village of Brill, Wisconsin. On appeal, it is undisputed that Eder lived in that apartment. The search warrant identified Estes as the object of the search.

¶6    The affidavit in support of the search warrant stated that on April 19, 2019, a records check showed that Estes had "a felony warrant through Barron County Circuit Court for bail jumping and a felony warrant through the Wisconsin Department of Corrections." The affidavit further stated that Carroll had observed Estes outside of the apartment in question on April 19. The affidavit stated that Carroll knew Estes from prior law enforcement contacts "and was familiar that he lived at the residence due to drug[-]related tips and observing his girlfriend['s] (Brooke Eder) vehicles parked at the residence."

¶7    The search warrant affidavit also alleged that the "Barron County RMS system" listed the apartment as Estes' address. In addition, the affidavit stated that on April 24, 2019, Carroll "received information from a United States Postal Inspector that … Eder receives her mail" at the apartment. Finally, the affidavit alleged that Carroll had spoken with the Barron County Health and Human Services Department, "who advised [that] … Estes is not to be on the

3

property due to a child protective services agreement and that [Eder] lives in the upstairs apartment."[2]

¶8      On April 25, 2019, law enforcement executed the April 24 warrant to search Eder's apartment for Estes.  After entering the apartment and arresting Estes, officers entered and searched the apartment building's basement.  In the basement, Carroll observed a large bag of suspected methamphetamine, digital scales, and multiple smoking devices.

¶9      Later that day, Carroll applied for and received a second search warrant, which permitted law enforcement to search Eder's apartment for methamphetamine, drug paraphernalia, firearms, and other evidence associated with the manufacture and sale of illegal drugs.  The affidavit in support of the second search warrant relied on the evidence that Carroll had observed in the apartment building's basement earlier that day.  Law enforcement executed the second search warrant on April 25.  During that search, they discovered a crystal-like substance, which field tested positive for methamphetamine, inside a jewelry box in Eder's bedroom.

¶10     The State charged Eder with possession of methamphetamine.  Eder then moved to suppress the evidence that law enforcement had discovered in her bedroom.  She argued that the first search warrant was defective because it was

---

[2] The search warrant affidavit also alleged that a confidential informant had reported that Estes "lives in the upper level with his girlfriend (Brooke Eder) and keeps methamphetamine and stolen goods in the lower level which is accessed through a south[-]facing locked door that only [Estes] has access to."  The circuit court did not rely on these allegations in reaching its decision regarding probable cause, concluding that there was nothing in the search warrant affidavit indicating that the confidential informant was reliable or that Carroll had corroborated the information that the informant provided.  We likewise do not rely on the confidential informant's information in reaching our decision regarding probable cause.

not supported by probable cause, and she further argued that the evidence found in her bedroom was discovered "as a direct result of [that] Fourth Amendment violation."

¶11 The circuit court held a nonevidentiary hearing on Eder's suppression motion in order to determine whether there was probable cause for the issuance of the first search warrant. The court ultimately issued a written decision denying Eder's motion. It determined that the information in the first search warrant affidavit gave rise to probable cause to believe that Estes "would be at the property named in the search warrant on April 24, 2019 due to [his] ongoing relationship with Ms. Eder." The court rejected Eder's argument that information in the first search warrant affidavit was stale.

¶12 Eder then filed a second suppression motion, arguing that even if the first search warrant was supported by probable cause, law enforcement violated the Fourth Amendment by entering and searching the apartment building's basement without a warrant *after* they had completed the execution of the first search warrant by locating and seizing Estes. Eder further argued that the second search warrant affidavit was defective because it relied on evidence discovered during the illegal warrantless search of the basement. In response, the State asked the circuit court to hold a hearing to determine whether Eder had standing to challenge the warrantless search of the basement.

¶13 The circuit court held an evidentiary hearing on the issue of standing, during which Estes, Eder, Tom Smrekar (the owner of the apartment

building), and John Johnson (the building's downstairs tenant) testified. Based on the testimony of those witnesses, the court made the following findings of fact.[3]

¶14 Eder's apartment building had three units, but only two of those units were occupied on the dates at issue in this case.[4] The building's basement was part of Johnson's lease, but Johnson and Smrekar allowed Estes and Eder to use the basement. Estes and Eder used the basement regularly, they stored items in the basement, and Estes used the basement to "work on projects." Estes and Eder paid "a little bit of rent" to Johnson in order to use the basement. The basement could be accessed both from an exterior door and from Johnson's apartment. Estes put a lock on the basement's exterior door, locked it, and gave one of the two keys to Johnson. Although Johnson could access the basement through his apartment, he did not use the basement regularly "because it was wet."

¶15 Based on these factual findings, the circuit court denied Eder's second suppression motion, concluding that she did not have a reasonable expectation of privacy in the apartment building's basement and therefore lacked standing to challenge the warrantless search of the basement. Eder subsequently entered a guilty plea to an amended charge of possession of amphetamine, pursuant to a plea agreement. She now appeals, arguing that the court erred by denying her suppression motions. *See* WIS. STAT. § 971.31(10) (stating that an

---

[3] On appeal, neither Eder nor the State argues that any of the circuit court's factual findings are clearly erroneous. *See* **State v. Dearborn**, 2010 WI 84, ¶13, 327 Wis. 2d 252, 786 N.W.2d 97 (when reviewing a circuit court's decision on a motion to suppress evidence, we accept the court's factual findings unless they are clearly erroneous).

[4] Although the circuit court did not make a specific finding as to which apartment Eder and Estes occupied, Eder and Estes both testified that they lived in an upstairs unit. Johnson testified that his apartment was on the ground floor of the building.

order denying a motion to suppress evidence may be reviewed on appeal notwithstanding the defendant's entry of a guilty or no-contest plea).

## DISCUSSION

¶16    Both the Fourth Amendment to the United States Constitution and article 1, section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures. *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97. A search conducted pursuant to a warrant is reasonable only if the warrant stems from a judicial finding of probable cause. *State v. DeSmidt*, 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990). A warrantless search, in turn, is presumptively unreasonable unless an exception to the warrant requirement applies. *State v. Dalton*, 2018 WI 85, ¶38, 383 Wis. 2d 147, 914 N.W.2d 120.

¶17    Generally, we employ a two-step analysis when reviewing a circuit court's decision on a motion to suppress evidence. *See Dearborn*, 327 Wis. 2d 252, ¶13. We accept the court's findings of fact unless they are clearly erroneous, but the application of constitutional principles to those facts is a question of law that we review independently. *Id.*

## I. Probable cause for issuance of the first search warrant

¶18    On appeal, Eder argues that the circuit court erred by denying her first suppression motion. Specifically, she contends that the court erred by rejecting her claim that the first search warrant was not supported by probable cause. She then argues that the evidence discovered during the execution of the second search warrant should have been suppressed because "the information gained from the execution of the illegal first warrant was critical" to the issuance of the second warrant.

7

¶19 When reviewing whether probable cause existed for the issuance of a search warrant, "we are confined to the record that was before the warrant-issuing judge." *DeSmidt*, 155 Wis. 2d at 132. "The person challenging the warrant bears the burden of demonstrating that the evidence before the warrant-issuing judge was clearly insufficient." *Id.* We do not independently review the warrant-issuing judge's determination of probable cause; instead, we give "great deference" to that determination. *Id.* The question before us on appeal is whether the warrant-issuing judge had a "substantial basis" for concluding that probable cause existed. *Id.* at 133 (citation omitted). Probable cause requires a "practical, common-sense decision" that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

¶20 Here, the information in the first search warrant affidavit provided a substantial basis for the warrant-issuing judge to conclude there was a fair probability that Estes would be found in Eder's apartment. The affidavit alleged that: (1) Carroll had observed Estes outside the apartment on April 19, 2019—five days before Carroll applied for the warrant; (2) Eder was Estes' girlfriend, and Carroll had seen Eder's vehicles parked outside the apartment; (3) the "Barron County RMS system" listed the apartment as Estes' address; (4) on the day Carroll applied for the warrant, a United States Postal Inspector confirmed that Eder received her mail at the apartment; and (5) according to the Barron County Health and Human Services Department, Eder lived in the apartment, and Estes was not allowed to be on the property "due to a child protective services agreement."

¶21 Collectively, these allegations gave rise to reasonable inferences that: Estes and Eder were in an ongoing romantic relationship; Eder lived in the apartment; and Estes either lived in, or was a frequent visitor to, the apartment.

These reasonable inferences, and the fact that Carroll saw Estes outside the apartment five days before applying for the search warrant, provided a substantial basis for the warrant-issuing judge to conclude there was a fair probability that Estes would be found in the apartment.

¶22    Eder argues that the facts alleged in the first search warrant affidavit did not give rise to probable cause because "the information was stale." "[S]earch warrants may not rest on stale evidence." *State v. Loranger*, 2002 WI App 5, ¶24, 250 Wis. 2d 198, 640 N.W.2d 555 (2001). The facts set forth in a warrant affidavit must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *State v. Ehnert*, 160 Wis. 2d 464, 469, 466 N.W.2d 237 (Ct. App. 1991) (citation omitted). Timeliness, however, is not determined by counting "the days or months between the occurrence of the facts relied upon and the issuance of the warrant." *Id.* Instead, the timeliness of the information depends upon the nature of the underlying circumstances. *Id.* Ultimately, whether the information in a search warrant affidavit is stale "must be determined by the circumstances of each case." *Id.* (citation omitted).

¶23    In this case, the first search warrant affidavit alleged that Carroll had seen Estes outside the apartment five days earlier. Eder concedes that five days "is not a particularly long time." She argues, however, that "people are highly mobile," and "[a] single observation that a particular person was in a particular place at a particular time says very little about whether they will be there five days later."

¶24    This argument is unpersuasive because the first search warrant affidavit did not contain merely a "single observation" that Estes was outside the apartment on a particular date. Instead, the affidavit contained information

9

supporting reasonable inferences that Eder lived in the apartment and that Eder and Estes were in an ongoing romantic relationship. The affidavit also stated that Barron County's RMS system listed the apartment as Estes' address.[5] This information, when combined with Carroll's observation of Estes outside the apartment five days earlier, supported a reasonable inference that Estes was at the apartment with some regularity and was not merely an occasional visitor at that location. Thus, the information in the search warrant affidavit gave rise to a fair probability that Estes would be found in the apartment. Under these circumstances, we reject Eder's argument that the information in the search warrant affidavit was stale.

¶25 Eder also argues that the child protective services agreement prohibiting Estes from being on the property made it "substantially unlikely" that he would be there on April 24, 2019—the date the first warrant was issued. Although Carroll had observed Estes outside the apartment only five days earlier, on April 19, Eder asserts there is "no proof that the prohibition on Estes' presence there was in place on April 19." Eder therefore suggests that Estes' presence at the property on April 19 did not give rise to a reasonable inference that he would be present at the property on April 24, while the child protective services agreement was in effect.

---

[5] Eder observes that the search warrant affidavit contains "no information about what Barron County RMS is or proof that the address listed there was accurate or up-to-date even on April 19." Despite the lack of this additional information, the warrant-issuing judge could reasonably infer that "the Barron County RMS system" referenced in the search warrant affidavit was an information system maintained by Barron County. In the absence of any evidence that the address listed for Estes in that system was out of date, the judge could also reasonably infer that the information in the system was current.

¶26 Eder is correct that the search warrant affidavit contains no specific information about when the child protective services agreement went into effect. Given the absence of any information to the contrary, however, the warrant-issuing judge could reasonably infer that the agreement had been in effect five days earlier, on April 19, when Carroll observed Estes outside the apartment. Given that reasonable inference, the judge could reasonably conclude there was a fair probability that Estes would be in the apartment on April 24, even though the child protective services agreement prohibited him from being there.

¶27 Eder also observes that Carroll could have arrested Estes on April 19 pursuant to Estes' outstanding warrants, but Carroll chose not to do so. To the extent Eder intends to suggest that Carroll's failure to arrest Estes on April 19 is relevant to our probable cause analysis, we reject that notion. Again, the question before the warrant-issuing judge was whether the information in the search warrant affidavit gave rise to a fair probability that Estes would be found in the apartment. *See Gates*, 462 U.S. at 238. Whether Carroll could have arrested Estes on an earlier date has no bearing on that analysis.

¶28 For all of these reasons, we conclude there was a substantial basis for the warrant-issuing judge's determination that the first search warrant affidavit established probable cause to search Eder's apartment for Estes. Because we reject Eder's claim that the first search warrant was invalid, we need not address her argument that the evidence found in her bedroom must be suppressed because it was derived from information obtained as a result of the first warrant.

## II. Standing to challenge the warrantless search of the basement

¶29 As Eder correctly notes, the State conceded in the circuit court that the first search warrant did not authorize law enforcement's initial search of her

11

apartment building's basement.[6] In her second suppression motion, Eder argued that the warrantless search of the basement violated the Fourth Amendment. She further argued that the evidence discovered during the subsequent search of her bedroom, which was conducted pursuant to the second search warrant, should be suppressed because the affidavit in support of the second search warrant relied on evidence discovered during the warrantless search of the basement. The circuit court did not address the merits of Eder's second suppression motion. Instead, the court denied the motion on the grounds that Eder lacked standing to challenge the warrantless search of the basement.

¶30    An individual must have standing in order to challenge the constitutionality of a search. *State v. Bruski*, 2007 WI 25, ¶¶21-22, 299 Wis. 2d 177, 727 N.W.2d 503. There is no bright-line test for determining whether an individual has standing to assert a Fourth Amendment violation, "but standing exists when an individual has a reasonable expectation of privacy." *Id.*, ¶22. The determination of whether an individual has a reasonable expectation of privacy depends on: "(1) whether the individual has by his or her conduct exhibited an actual (subjective) expectation of privacy in the area searched and in the seized item, and (2) whether such an expectation is legitimate or justifiable in that it is one that society is willing to recognize as reasonable." *State v. Dixon*, 177 Wis. 2d 461, 468, 501 N.W.2d 442 (1993).

---

[6] According to the second search warrant affidavit, the initial search of the basement occurred after officers had entered Eder's apartment and arrested Estes, who was the sole object of the first search warrant. "A search may not be continued after the objects identified in the search warrant have been located and seized." *State v. Starke*, 81 Wis. 2d 399, 414, 260 N.W.2d 739 (1978).

¶31    In this case, the circuit court concluded—and the State does not dispute—that Eder had a subjective expectation of privacy in the apartment building's basement.[7]  The disputed issue on appeal is whether Eder's subjective expectation of privacy in the basement was objectively reasonable under the second prong of the *Dixon* test.

¶32    The *Dixon* court stated that the following factors are "relevant" to determining whether an individual's subjective expectation of privacy is objectively reasonable:

> (1) whether the accused had a property interest in the premises; (2) whether the accused is legitimately (lawfully) on the premises; (3) whether the accused had complete dominion and control and the right to exclude others; (4) whether the accused took precautions customarily taken by those seeking privacy; (5) whether the property was put to some private use; [and] (6) whether the claim of privacy is consistent with historical notions of privacy.

*Id.* at 469.

¶33    As an initial matter, we agree with Eder that the circuit court failed to apply the correct legal standard when analyzing the second prong of the *Dixon* test.  Citing *State v. Eskridge*, 2002 WI App 158, 256 Wis. 2d 314, 647 N.W.2d 434, the court stated that in order to satisfy the second prong of the *Dixon* test, "there is a requirement that all six factors must be found."  The *Dixon* court expressly stated, however, that the six factors listed therein are "not controlling or exclusive."  *Dixon*, 177 Wis. 2d at 469.  Instead, "[t]he totality of the

---

[7] The circuit court concluded that Eder had a subjective expectation of privacy in the basement because she and Estes used the basement regularly, Estes put a lock on the basement's exterior door, and Johnson knew about their use of the basement and did not object to that use.

circumstances is the controlling standard." *Id.* Our supreme court has since reiterated that the list of factors in *Dixon* is "neither controlling nor exclusive" and that courts "consider the totality of the circumstances when evaluating the latter prong of the reasonable expectation test." *Bruski*, 299 Wis. 2d 177, ¶24. Because the list of factors in *Dixon* is not controlling or exclusive, and because the totality of the circumstances is the controlling standard, it necessarily follows that a defendant may be able to satisfy the second prong of the *Dixon* test without establishing all six of the factors listed in that case.[8]

¶34 We further agree with Eder that, considering the totality of the circumstances, her subjective expectation of privacy in the apartment building's basement was objectively reasonable and therefore satisfies the second prong of the *Dixon* test. As the circuit court correctly held, Eder satisfied the first *Dixon* factor because she and Estes paid rent to Johnson to use the basement and therefore had a property interest in that area. *See Dixon*, 177 Wis. 2d at 469. Applying the second *Dixon* factor, the court also correctly ruled that Eder's presence in the basement was legitimate. *See id.* Again, Eder and Estes paid rent to use the basement, and both Johnson and Smrekar had consented to their use of that area.

¶35 The circuit court also determined that Eder had satisfied the fourth *Dixon* factor because she and Estes took precautions customarily taken by those seeking privacy. *See id.* Specifically, the court noted that Estes had put a lock on

---

[8] In *Eskridge*, this court stated, "If Eskridge satisfies all six factors, he prevails on the second prong of the [*Dixon*] test." *State v. Eskridge*, 2002 WI App 158, ¶16, 256 Wis. 2d 314, 647 N.W.2d 434. Stating that a defendant who satisfies all six of the *Dixon* factors will prevail on the second prong of the *Dixon* test is not tantamount to stating that a defendant *must* satisfy all six factors to prevail on the second prong of that test.

the basement's exterior door. The court further held that the fifth ***Dixon*** factor was satisfied because Eder and Estes put the basement to private use by storing household items in the basement and using the basement to "work on projects." *See **id.***

¶36    Thus, the circuit court determined that Eder had satisfied four of the six ***Dixon*** factors. The court concluded, however, that Eder could not prevail on the second prong of the ***Dixon*** test because she had not satisfied the two remaining factors. In particular, the court held that the third ***Dixon*** factor was not satisfied because Eder and Estes did not have "complete dominion and control and the right to exclude others" from the basement. *See **id.*** The court reasoned that Johnson was the only person who had the right to exclude others, as the basement was part of his lease and Eder and Estes used the basement with his permission. The court also noted that while Eder and Estes "did exclude some" people from the basement, they could not exclude Johnson.

¶37    The circuit court's analysis of the third ***Dixon*** factor is flawed because it fails to recognize that Eder and Estes shared dominion and control over the basement with Johnson. It is undisputed that Estes placed a lock on the exterior door to the basement—an action that was clearly taken to exclude others from using the basement. Johnson did not prevent Estes from placing a lock on the exterior door, and there is no evidence in the record to suggest that Johnson objected to Estes doing so. Thus, while Eder and Estes did not—and could not—exclude Johnson from using the basement, it is clear that they took at least some action to prevent others from accessing that area. We agree with Eder that while Johnson's ability to access the basement may have reduced Eder's and Estes' expectation of privacy in the basement, it did not negate that expectation. *See **Minnesota v. Olson***, 495 U.S. 91, 99-100 (1990) (explaining that the

15

"untrammeled power to admit and exclude" is not "essential to Fourth Amendment protection").

¶38 Applying the sixth *Dixon* factor, the circuit court concluded that Eder's expectation of privacy in the basement was not "consistent with historical notions of privacy" because Johnson "could have accessed [the basement] at any time," and "[Eder and Estes] knew that he could go in there and … allow anyone else to do that." *See Dixon*, 177 Wis. 2d at 469. While the court was correct that Johnson could have accessed the basement at any time and could have allowed others to do so, we are not convinced that those circumstances rendered Eder's expectation of privacy in the basement inconsistent with historical notions of privacy. Eder and Estes lived in the apartment building and paid rent to use the building's basement. They used the basement for multiple purposes, and although Johnson had the ability to access the basement, the court found that he did not use it regularly. Under these circumstances, we agree with Eder that her expectation of privacy in the basement—an area that she and Estes paid rent to use and that was accessible to a limited number of people—was consistent with historical notions of privacy.

¶39 Again, Eder was not required to establish all six of the *Dixon* factors in order to prevail on the second prong of the *Dixon* test. Nevertheless, we conclude, based upon the circuit court's factual findings, that Eder established all six of those factors. Under the totality of the circumstances, Eder had a legitimate expectation of privacy in the basement, which society is willing to recognize as reasonable. *See id.* at 468. Notably, the United States Supreme Court has held that society recognizes as legitimate an overnight houseguest's expectation of privacy in the home of his or her host. *See Olson*, 495 U.S. at 98-100. If a houseguest has a legitimate expectation of privacy in a home where he or she is

merely spending the night, then surely Eder had a legitimate expectation of privacy in her apartment building's basement, which she and Estes used regularly, paid rent to use, and took action to exclude others from using.

¶40 Because Eder had a subjective expectation of privacy in the apartment building's basement, and because society is willing to recognize that expectation as reasonable, we conclude that Eder has standing to challenge law enforcement's warrantless search of the basement. As noted above, because the circuit court concluded that Eder lacked standing to challenge the warrantless search, it did not address the merits of Eder's second suppression motion. We therefore reverse Eder's judgment of conviction, and, consistent with Eder's request, we remand this matter for the court to conduct further proceedings on the merits of Eder's second suppression motion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.