COURT OF APPEALS
DECISION
DATED AND FILED

September 18, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP239-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CT600

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

MARK T. SOLHEIM,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Walworth County: DAVID M. REDDY, Judge. *Reversed and cause remanded for further proceedings.*

¶1     GUNDRUM, P.J.[1]   The State appeals from a circuit court order granting Mark T. Solheim's motion to suppress evidence based upon the court's

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

conclusion that the officer who filed the affidavit in support of a search warrant authorizing Solheim's blood draw included a false statement made with a reckless disregard for the truth. Because we conclude Solheim did not make the necessary initial showing to be granted an evidentiary hearing on his motion and because, despite being afforded a hearing, he failed to establish that the affiant made the false statement with a reckless disregard for the truth, we uphold the warrant and reverse and remand for further proceedings.

## *Background*

¶2      A circuit court judge issued a search warrant authorizing a draw of Solheim's blood after determining the arresting officer's affidavit established the requisite probable cause. That blood draw led to charges for operating while intoxicated (OWI), third offense, and operating a motor vehicle with a prohibited alcohol concentration (PAC), third offense.

¶3      As relevant to this appeal, the officer swore in his affidavit that Solheim was arrested for OWI because he (1) was driving his vehicle while under the influence at "5:00PM" on October 9, 2022; (2) had "glassy eyes"; (3) admitted to drinking two beers; (4) Solheim's wife, Alexandrea Solheim, had "observed" Solheim "PULL[] INTO THE DRIVEWAY IN THEIR ESCALADE"; (5) Solheim himself had "admitted to driving/operating the motor vehicle"; and (6) during Solheim's performance of field sobriety tests, the officer observed six out of six possible clues of intoxication on the horizontal gaze nystagmus test, three of eight possible clues on the walk and turn test, and two of four possible clues on the one leg stand test.

¶4      Solheim moved to suppress blood alcohol evidence[2] based upon his contention that the arresting officer's statement in his affidavit that Solheim had driven his vehicle at "5:00PM" on October 9, 2022, was "total speculation" and "completely arbitrary, capricious, and not credible/plausible" and that without that statement the officer's affidavit "lacks probable cause."  At the hearing on Solheim's motion, with the same judge presiding who had signed the warrant, the following relevant evidence was presented.

¶5      Alexandrea testified she called the police around 5:00 p.m. on October 9, 2022, "because I had locked the doors to my home with my children inside, and my husband was trying to get in the door."  She told the police she was calling because she was upset with Solheim because "he took [their children] down to Oktoberfest, I didn't know where they were, and that I had picked them up, locked the door, and now he's trying to break into the house."  The police responded to the home quickly.  Alexandrea agreed that even though her husband also lived at the home, she had locked the door due to "a concern for [her] safety."

¶6      Alexandrea further testified that she returned home from Oktoberfest with her children around 2:45 p.m. and that Solheim subsequently drove home in a black SUV, arriving home sometime between 3:00 and 3:15 p.m.  She indicated she was familiar with the sight of Solheim drunk and on that day she "believed that he had been drinking, but … had no proof."  She stated she knows when he is drunk because of "[t]he way his eyes look, the way he speaks, or on the opposite, the way he just does not speak, kind of goes silent."  She disagreed that Solheim

---

[2] Solheim also filed a "Motion to Suppress and Dismiss Fruits of Illegal Arrest."  This motion was briefly discussed on the record, and according to the docket in Walworth County Case No. 2022CT600, the circuit court orally denied it.  It is not at issue on appeal.

tried to enter the house immediately after arriving home, stating instead that "he was mostly in the barn and around." She indicated she did not see Solheim drinking anything after he returned home from Oktoberfest.

¶7 On cross-examination, Alexandrea testified that she did not go outside the house until after the police arrived. At "some point" on October 9, 2022, she went into the barn and saw "a half-full Smirnoff bottle." She agreed that Solheim drove into the driveway around 3:00 p.m., and she testified that if police had indicated that Solheim had driven into the driveway around 5:00 p.m., that would "not [be] accurate." On redirect examination, she indicated she assumed the bottle of Smirnoff "may have been opened and consumed" on that day, but she did not know "the accuracy of that."

¶8 Officer Jeffrey Sargent testified that he responded to the Solheim home shortly after 5:00 p.m. on October 9, 2022, for a "domestic" situation. Upon arriving at the home, the officer encountered Solheim, who indicated his wife was upset with him but that he was not certain as to why. Solheim also stated he had had two of their children with him at Oktoberfest but that "his wife came and picked them up." While speaking with Solheim, the officer observed that his eyes were "glassy" and "smell[ed] [the] odor of intoxicants coming from him." Upon inquiry, Solheim told the officer he had consumed two beers at Oktoberfest approximately one and one-half hours earlier. The officer agreed that when he asked Solheim for his identification, Solheim "looked all over the place" but could not find it, but later "found it in his pocket." When asked by the officer, Solheim indicated he had not consumed alcohol since returning home from Oktoberfest.

¶9 The officer asked Solheim to perform field sobriety tests because the officer "believed he was intoxicated and … had driven home." The officer agreed

that he believed this "based on [Solheim's] admission to drinking and driving and other witness's statement and also [the officer's] observations." Solheim originally refused to do the tests but eventually agreed.

¶10     After the officer explained to Solheim why he wanted Solheim to do the field sobriety tests, Solheim "changed his statement and said he in fact did not drive home, that he walked home from Oktoberfest" and also stated that he "had drinks when he arrived at home." The officer agreed that when Solheim performed the field sobriety tests, the officer "observe[d] a number of clues indicating that [Solheim] was impaired," confirming the officer's "observations that [Solheim] was drunk driving." The officer arrested Solheim for OWI.

¶11     Solheim refused to consent to a blood draw, causing the officer to apply for a search warrant, which he supported with the previously mentioned affidavit. The judge granted the warrant, and a sample of the defendant's blood was procured.[3]

¶12     On cross-examination, the officer agreed he was dispatched to the Solheim home "for a domestic abuse situation." He testified that when he encountered Solheim outside of his house, Solheim "did appear to be intoxicated." Solheim appeared confused, and his speech was "off." The officer acknowledged he never personally observed Solheim drive and found no alcohol in a search of Solheim's vehicle. The officer agreed he did not know "when" Solheim had driven "other than … after Oktoberfest and then prior to my arrival." The officer indicated he had not searched the barn.

---

[3] The criminal complaint indicates that an analysis of the sample showed Solheim's blood alcohol content (BAC) to have been .266.

¶13 In response to questioning from the circuit court, the officer stated he had put "5:00PM" as the time that Solheim had driven his vehicle because the officer "believed that [Solheim] had just returned home from the Oktoberfest at the time that [Alexandrea] called." He believed this because

> when she called, she … stated her husband was trying to get into the house, which led me to believe that he had come home from Oktoberfest and then proceeded to try to get into the house. She had never said that he was in the barn or was home for a while. It was just reported that he got home from Oktoberfest and then was trying to get into the house.

Upon redirect examination, the officer explained that he had not searched the barn for alcohol "because [Solheim] had denied drinking at home so there was no reason to search the premise for any alcohol."

¶14 Solheim's mother, Patricia Solheim, testified next. She stated she went to Oktoberfest to check on Solheim and Alexandrea's children—her grandchildren—and encountered Solheim there. She was standing just a few feet from Solheim and "did not believe he was drunk"; he was not slurring his speech and did not have "an odor of intoxicants on him." She stated that she "d[idn't] recall specifically looking at [Solheim's] eyes," but she also (contradictorily) indicated his eyes were not bloodshot, and she did not believe they were "glassy."

¶15 Patricia testified that she took one of the Solheim children home around 2:45 p.m. and stayed at the house only long enough to explain to Alexandrea that there was a misunderstanding regarding the whereabouts of one of the children at Oktoberfest. Sometime later, after she left the Solheim home, Patricia received a text from Alexandrea indicating she was upset with Solheim; so Patricia returned to the home "[s]ometime between 5:00 and 5:30" p.m., and observed police on the property.

¶16    The circuit court found that at the time the officer engaged with Solheim on October 9, 2022, he was "definitely intoxicated."[4]  The court also found that Solheim had driven his vehicle, as the officer's search warrant affidavit stated, but that the driving occurred between 3:00 and 3:15 p.m., not around 5:00 p.m., as the officer had indicated in his affidavit.  The court determined the 5:00 p.m. driving time the officer had included in his affidavit was false and needed to be excised from it because, the court concluded, "there was a reckless disregard for the truth inasmuch as I think [the officer's] investigation was poor at best."  The court granted Solheim's suppression motion, and the State appeals.

*Discussion*

¶17    In *State v. Anderson*, 138 Wis. 2d 451, 406 N.W.2d 398 (1987), our supreme court laid out the review process and standard for a defendant challenging a search warrant on the basis that the affidavit supporting it contains false information.

> [T]he defendant must first make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and that the allegedly false statement is necessary to the finding of probable cause.
>
> To make a substantial preliminary showing "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is

---

[4] The circuit court then stated, "But [Solheim's] position was he drank after he got home."  This is not a factual finding that Solheim in fact drank after he returned home from Oktoberfest; indeed, Solheim did not testify at the hearing, and his wife's testimony was that she had not seen him drink anything after returning home from Oktoberfest.  Instead, it appears to be merely a restatement of Solheim's theory of defense at the evidentiary hearing.

claimed to be false; and they should be accompanied by a statement of supporting reasons."

*Id.* at 462 (second alteration in original; citations omitted).

¶18     If the defendant makes the requisite "substantial preliminary showing," the circuit court will hold a "*Franks*"[5] hearing.  Importantly, "the defendant is *only entitled to a hearing if* he or she first makes a substantial showing that a false statement was knowingly or intentionally, or with reckless disregard for the truth, included by the affiant in the affidavit and that the alleged false statement is necessary to a finding of probable cause."  *Anderson*, 138 Wis. 2d at 463 n.5 (emphasis added).

¶19     "A presumption of validity attends the affidavit."  *Id.* at 463.  To overcome this presumption, the defendant must prove at the *Franks* hearing, by a preponderance of the evidence,

> first[,] … that the challenged statement is false, and second, that the affiant intentionally made the false statement or that the statement was made with a reckless disregard for the truth.  Proof that the challenged statements were made innocently or negligently is insufficient to have the challenged statement removed from the affidavit….
>
> … [T]o prove reckless disregard for the truth, the defendant must prove that the affiant in fact entertained serious doubts as to the truth of the allegations or had obvious reasons to doubt the veracity of the allegations.  Because the defendant must show either intent or reckless disregard, a *Franks* hearing, by necessity, focuses on the state of mind of the affiant.
>
> If the challenged statements are proven to be false and either made recklessly or intentionally, then the challenged statements are excised from the affidavit.  The affidavit is then examined to determine whether, with the statements

---

[5] *Franks v. Delaware*, 438 U.S. 154 (1978).

> excised, the affidavit provides probable cause for a search warrant. If the affidavit fails to state probable cause, the warrant is voided and the evidence seized pursuant to the warrant must be suppressed. If with the challenged statements excised the warrant still states probable cause, the warrant is upheld and the evidence is admissible.

*Anderson*, 138 Wis. 2d at 463-64 (citations omitted).

¶20 We conclude we must reverse because Solheim failed to make a sufficient preliminary showing to entitle him to the *Franks* hearing in the first instance. Moreover, at the hearing, Solheim failed to overcome the presumption of validity attending the officer's affidavit by showing that the false 5:00 p.m.-driving information in the affidavit was included with a reckless disregard for the truth.

Preliminary showing

¶21 As indicated, a defendant is entitled to a hearing to challenge the affidavit and warrant only if he or she makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and that the allegedly false statement is necessary to the finding of probable cause." *Anderson*, 138 Wis. 2d at 462. Such a showing requires "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* (citation omitted). "[R]eckless disregard for the truth" requires a defendant to show that the affiant "in fact entertained serious doubts as to the truth of the allegations or had obvious reasons to doubt the veracity of the allegations." *Id.* at 463.

¶22 Solheim asserted in his motion to suppress that:

1. That information in the Affidavit in support of Blood Warrant has some information that is not true or accurate.

2. That this untrue and inaccurate information causes the search warrant to lack probable cause.

3. Specifically, Ms. Alex Solheim did not *see* Mr. Solheim pull into the driveway in their [E]scalade.

4. Also, No. 8 of the Affidavit indicates the *date* of driving/operation is October 9, 2022 at 5 p.m. This statement is total speculation.

5. The police never saw Mr. Solheim drive, Ms. Solheim never said Mr. Solheim drove at 5 p.m. and Mr. Solheim never said he drove at 5 p.m. This proposed fact is completely arbitrary, capricious, and not credible/plausible.

6. That without knowing Mr. Solheim allegedly drove at 5 p.m. the Affidavit in support of [the] search warrant lacks probable cause.

(Emphasis added.)

¶23 The first two assertions are conclusory and say nothing helpful. We assume assertion three relates to a statement in para. 12.b. of the officer's affidavit, that "[a] citizen witness … SOLHEI[M], ALEX *observed* the person drive/operate the vehicle in the following manner … Driver PULLED INTO THE DRIVEWAY IN THEIR ESCALADE." (Emphasis added.) Solheim did not dispute in the motion that he in fact "pulled into the driveway in [his] [E]scalade"; he only asserted that his wife did not actually "see" him do that.

¶24 Assertion three does not make a "substantial preliminary showing" to support the circuit court holding a ***Franks*** hearing because such a showing must also demonstrate that the allegedly false statement "is necessary to the finding of

probable cause." *See **Anderson***, 138 Wis. 2d at 462. Here, the motion fails in this regard because immediately following para. 12.b. of the affidavit is para. 12.c., which states that Solheim himself "admitted to driving/operating the motor vehicle." Thus, even if the officer had not averred that Alexandrea had "observed" Solheim drive/operate the vehicle, Solheim himself admitted doing that.

¶25 Assertion four is completely unhelpful. It states that "No. 8 of the Affidavit indicates the *date* of driving/operation is October 9, 2022 at 5 p.m. This statement is total speculation." (Emphasis added.) Not only does Solheim's motion not assert that the October 9, 2022 date (or the 5:00 p.m. time for that matter) of his driving is false, it makes no suggestion that the officer "in fact entertained serious doubts as to the truth of the [date] or had obvious reasons to doubt the veracity" of the date. *See **id.*** at 463. That is not a surprise because in fact Solheim's driving underlying this case indisputably did occur on October 9, 2022. There was nothing remotely false about this date, and the motion does assert that there was.

¶26 As to assertion five, the officer's affidavit does not state the officer "saw Mr. Solheim drive," and in fact a related box at para. 12.a.—"A peace officer observed the person drive/operate the vehicle"—is left *unchecked*, thus suggesting only the truth—that the officer himself did *not* observe Solheim drive his vehicle. Assertion five continues with: "Ms. Solheim never said Mr. Solheim drove at 5 p.m. and Mr. Solheim never said he drove at 5 p.m. This proposed fact is completely arbitrary, capricious, and not credible/plausible." This does not assert that the officer made a false representation in the affidavit as he never stated therein that Alexandrea or Solheim told the officer that Solheim drove at 5:00 p.m. While one could make an inference that because the officer indicated that

Alexandrea and Solheim both informed the officer that Solheim had been driving his vehicle, the "5 p.m." time came directly from them, that would not be the only explanation for the officer's representation that the driving occurred around 5:00 p.m. As we will discuss more later, the officer could have concluded based upon other factors—as he testified he in fact did—that the time of Solheim's driving was 5:00 p.m.

¶27 Finally, assertion six merely presents a legal conclusion.

¶28 Regardless and significantly, when the motion is read carefully, it is clear that it does not deny that Solheim's driving occurred at 5:00 p.m. and does not assert that the 5:00 p.m.-driving representation by the officer was actually false. These would have been very simple assertions to include, yet the motion instead appears to artfully dodge them. Even if Solheim wanted to avoid admitting in the motion that he had driven, he could have asserted, for example, "Mr. Solheim arrived home at approximately 3:00 p.m. on October 9, 2022, not 5:00 p.m." Relatedly and also significantly, the motion fails to allege the officer intentionally lied in stating Solheim drove at 5:00 p.m., that the officer made this representation while "entertain[ing] serious doubts" that this was the time Solheim drove, or that the officer had "obvious reasons to doubt" that this was the time of Solheim's driving. *See id.*

¶29 In **Anderson**, our supreme court stated it was "unconvinced that the hearing was providently granted." **Id.** at 464 n.7. Similarly here, Solheim was improvidently granted a **Franks** hearing, as his motion failed to make the necessary showing.

12

Failure to overcome the presumption of validity of the affidavit

¶30 The only statement Solheim challenged at his evidentiary hearing and continues to challenge is the officer's representation in his affidavit that Solheim's driving on October 9, 2022, occurred at 5:00 p.m. The affidavit indicates that at Solheim's home on that date, Solheim told the officer that he *did* drive home. Then, after the officer explained why he was going to have Solheim perform field sobriety tests, Solheim changed his story and told the officer he did not drive home but instead walked home. At the ***Franks*** hearing, Solheim took the position that he did drive home—but that he did so around 3:00 p.m. that day, not 5:00 p.m. This last position is the one he takes on appeal.

¶31 To overcome the presumption of validity of the officer's affidavit and the statements therein, *see **Anderson***, 138 Wis. 2d at 463, Solheim needed to show at the evidentiary hearing "both … that the statement [that Solheim drove around 5:00 p.m.] is false and that it was made either intentionally, or with reckless disregard for the truth," *see **id.*** Solheim asserts it was made with reckless disregard for the truth, which, again, requires a showing that the officer "entertained serious doubts as to the truth of the [5:00 p.m.] allegation[] or had obvious reasons to doubt the veracity" of that allegation. *See **id.*** Whether the 5:00 p.m. allegation was made with reckless disregard for the truth is a question of fact for the circuit court. ***State v. Mann***, 120 Wis. 2d 629, 632, 357 N.W.2d 9 (Ct. App. 1984), *rev'd on other grounds*, 123 Wis. 2d 375, 367 N.W.2d 209 (1985). We affirm a circuit court's findings of fact unless they are clearly erroneous. ***Phelps v. Physicians Ins. Co. of Wis., Inc.***, 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615.

13

¶32 At the hearing, Alexandrea flatly testified that Solheim drove home from Oktoberfest around 3:00 p.m., explaining in detail why she recalled that to be the time, but that she did not call the police about Solheim attempting to enter the house until 5:00 p.m. When the court subsequently asked the officer why he had put down the time of 5:00 p.m. in the affidavit, the officer responded, "Because I had believed that he had just returned home from the Oktoberfest at the time that she called." The court then asked, "What led you to believe that?" The officer responded:

> [S]he called and stated her husband was trying to get into the house, which led me to believe that he had come home from Oktoberfest and then proceeded to try to get into the house. She had never said that he was in the barn or was home for a while. It was just reported that he got home from Oktoberfest and then was trying to get into the house.

¶33 Finding Alexandrea's testimony on the matter credible, the court found as a matter of fact that Solheim drove home around 3:00 p.m., not 5:00 p.m. Because of this finding, which is supported by some evidence from the hearing, we must conclude that the officer's statement in the affidavit that Solheim drove at 5:00 p.m. was false. That conclusion, however, does not end this issue, as the officer's inference that Solheim had driven around 5:00 p.m. was not made with a reckless disregard for the truth.

¶34 "[T]o prove reckless disregard for the truth, the defendant must prove [by a preponderance of the evidence] that the affiant in fact entertained serious doubts as to the truth of the allegations or had obvious reasons to doubt the veracity of the allegations." *Anderson*, 138 Wis. 2d at 463. The focus is on the officer's state of mind. *Id.* at 464.

14

¶35 Here, Alexandrea called the police around 5:00 p.m. on October 9, 2022. The officer testified that he responded to the Solheim home around 5:10 or 5:15 p.m. to address a "domestic abuse situation." He encountered Solheim first, and Solheim stated he did not know why his wife had called the police. Solheim explained that he had had some of his children with him at Oktoberfest but that his wife had come and picked them up. Alexandrea testified that she had called the police around 5:00 p.m. that day, and when the police asked her what had happened and why she was calling, she essentially told the police she was upset with Solheim because "he took [the children] down to Oktoberfest, I didn't know where they were, and that I had picked them up, locked the door, and now he's trying to break into the house." Alexandrea also testified that she "d[idn]'t recall" if she had told the police at what time she had seen Solheim drive.

¶36 What matters is the officer's state of mind at the time he signed and submitted his affidavit to the circuit court in support of a search warrant. Solheim failed to establish that at that critical time the officer "in fact entertained serious doubts as to the truth of the [5:00 p.m. time] or had obvious reasons to doubt the veracity" of his belief that Solheim had driven home around 5:00 p.m. *See id.* at 463.

¶37 Here, the officer was dispatched for a domestic abuse incident after Alexandrea told the police at approximately 5:00 p.m. that Solheim had taken their children to Oktoberfest and she had "picked them up, locked the door, and now he's trying to break into the house." The officer's undisputed testimony was that Solheim initially had indicated he had driven home from Oktoberfest but then changed his story after the officer explained why he wanted Solheim to perform field sobriety tests. It was not unreasonable for the responding officer, who prepared the affidavit, to infer that all of the conduct of concern—Solheim driving

15

home from Oktoberfest, Alexandrea locking the door to the house, and Solheim "now … trying to break into the house" occurred right before she called the police at 5:00 p.m. Nothing in the record suggests Solheim, Alexandrea, or Patricia had indicated to any police personnel that the time of Solheim's driving was two hours before Alexandrea's call, and the officer testified that Alexandrea "had never said that he was in the barn or was home for a while." Even when Solheim changed his story about having driven home, he did not indicate he had arrived home two hours earlier than the approximately 5:15 p.m. time that he was interacting with the officer; instead, Solheim simply told the officer that he had walked home (which he now agrees was a lie).

¶38 The circuit court determined that in attesting in the affidavit that Solheim had driven at 5:00 p.m., the officer had exhibited "a reckless disregard for the truth." But, this determination was based solely on the court's conclusion that the officer's investigation on October 9, 2022, "was poor at best." The court criticized the officer for not "touching the hood of the vehicle to find out if it was warm" or actually asking Solheim what time he drove home—though the court also acknowledged that Solheim "was in no position to be making statements that were … forthcoming because he was definitely intoxicated."

¶39 While it appears the officer could have done a more thorough job securing evidence by simply asking Alexandrea what time Solheim had pulled into their driveway, the officer's reliance upon the inference that Solheim drove at 5:00 p.m. was innocent—or, at most, negligent—and did not amount to a reckless disregard for the truth. Indeed, the officer explained his understandable reason for assuming/inferring that Solheim had driven home around 5:00 p.m.— "[Alexandrea] had never said that he was in the barn or was home for a while. It was just reported [at 5:00 p.m.] that he got home from Oktoberfest and *then* was

16

trying to get into the house." (Emphasis added.) The officer had no reason to instead believe Solheim had driven home at 3:00 p.m., or at any time that day other than 5:00 p.m. There was no evidence produced at the hearing that the officer "in fact entertained serious doubts as to the truth of the [5:00 p.m. time] or had obvious reasons to doubt the veracity" of his representation in the affidavit that Solheim had driven around 5:00 p.m. *See id.* at 463. The circuit court's conclusion that the officer had made the 5:00 p.m. driving-time representation in the affidavit with reckless disregard for the truth was clearly erroneous. Because Solheim failed to establish that the officer made the false 5:00 p.m. statement with reckless disregard for the truth, we do not excise the 5:00 p.m. time from the affidavit, and the warrant stands as it originally did when presented to and approved by the judge.[6]

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[6] In its brief-in-chief, the State spends three and one-half pages developing an argument for why the affidavit still establishes probable cause even if the 5:00 p.m. time of driving is excised. In his response brief, Solheim fails to address this issue at all and thus concedes it. *See Singler v. Zurich Am. Ins. Co.*, 2014 WI App 108, ¶28, 357 Wis. 2d 604, 855 N.W.2d 707 ("Arguments not refuted are deemed conceded."); *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that "propositions of [parties] are taken as confessed which they do not undertake to refute" (citation omitted)). We could reverse on this basis alone, as we uphold the search warrant and deem the evidence admissible if the affidavit establishes probable cause after excising the challenged statement. *See State v. Anderson*, 138 Wis. 2d 451, 464, 406 N.W.2d 398 (1987). We additionally note that the circuit court found as a fact at the hearing that Solheim's actual time of driving was "between 3:00 and 3:15" p.m. Yet, even if the officer had put that timeframe, instead of 5:00 p.m., in the warrant, in light of Solheim's performance on the field sobriety tests as identified in the warrant, there still would have been probable cause shown in the warrant that Solheim had driven—around 3:00 p.m.—with a BAC of .08 or greater.

This opinion will not be published. *See* W<small>IS.</small> S<small>TAT.</small> R<small>ULE</small> 809.23(1)(b)4.