COURT OF APPEALS
DECISION
DATED AND FILED

October 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1342-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF911

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

PHILLIP J. ZADURSKI,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Phillip J. Zadurski, pro se, appeals from a judgment of conviction entered after his no contest pleas to three charges of possession with intent to distribute various illegal drugs. Zadurski contends that the search warrant pursuant to which evidence against him was obtained was insufficient under the Fourth Amendment[1] because it falsely described the duplex in which he lived as a "single-family residence" and that there was no probable cause to search both units of the building. We conclude that the search warrant was sufficiently particular and supported by probable cause and that even if Zadurski's contention that the building was a duplex is correct, he has failed to establish that any false information in the affidavit supporting the search warrant was the product of a reckless disregard for the truth as required to prove a ***Franks-Mann***[2] violation. We therefore affirm.

¶2     Deputy Sheriff James Muller applied for a warrant to search the premises at 409 West Market Street in the City of Burlington on July 10, 2019. His supporting affidavit alleged that, with his oversight, a "Reliable Confidential Informant" had purchased cocaine from Zadurski at this address on three separate occasions in the four weeks preceding July 10. Muller had observed a vehicle registered to Zadurski at the house—the same vehicle the informant had advised was used by Zadurski to transport narcotics. Muller's affidavit further stated that police had received numerous complaints of drug activity at the house and that the informant had advised Muller that Jillian Leighton rented the entire house, which "at one time … had two addresses, 409 and 411." Muller attested that he

---

[1] U.S. CONST. amend. IV.

[2] ***Franks v. Delaware***, 438 U.S. 154 (1978); ***State v. Mann***, 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

2

conducted a "utilities check," which showed Leighton on the account for 409 West Market Street and an inactive account for 411 West Market Street. He also checked the county tax records, which showed 409 West Market Street as a "viable parcel" and "411 W. Market Street did not exist as a separate address." Finally, Muller personally viewed the building at issue, finding it to be a "[t]wo-story single-family residence" and recording the following observations:

> The exterior is off white sided with white trim. There is a wraparound porch that has five white pillars and 409 on it. From the porch is a door to the first floor. There is also a door on the northwest corner of the residence with access to the second floor.

¶3  A judge signed the warrant, authorizing a search of "409 W. Market Street" and describing the property as a "[t]wo-story single-family residence" as Muller had done in his affidavit. Pursuant to Muller's request, the signed warrant listed various particular "Things to be Seized," including cocaine and other controlled substances, items often used in drug trafficking, and "documents … which can establish who is in control of the premises."

¶4  Prior to conducting the search, police went to Zadurski's workplace and took him into custody. In their subsequent search of the residence on West Market Street, they found a locked bedroom on the second floor, which they opened using keys found on Zadurski. In that room, they found a locked toolbox that, when opened with another of Zadurski's keys, contained drugs and other incriminating evidence. The State charged Zadurski with possession with intent to deliver for each of the drugs found (psilocybin, cocaine, tetrahydrocannabinols, methamphetamine, and amphetamine), as well as with maintaining a drug trafficking place.

¶5 Zadurski moved to suppress the evidence discovered in the home, arguing that the residence consisted of two units—409 and 411 West Market Street—and that the upper unit, 411, was not within the scope of the warrant, which was directed to only the lower unit, 409. He also argued that Muller's identification of the residence as a "single-family residence" was made with a reckless disregard for the truth and that the complaint against him must be dismissed pursuant to *Franks* and *Mann*.

¶6 The circuit court denied Zadurski's motion after a hearing (conducted over several separate days) at which Muller, Leighton, and a private investigator hired by the defense testified. Based on the witnesses' testimony and other evidence in the record, the court rejected Zadurski's argument that "since both addresses weren't put into the search warrant … the search of the entire home was outside the scope of the warrant." Without explicitly determining whether the residence was a duplex or a single-unit building, the court found that Muller's "efforts to obtain the address on Market Street house were diligent and, honestly, thorough"; in other words, that Muller conducted sufficient investigation into that question such that he did not "act[] with reckless disregard for the truth with respect to the other address being added to the affidavit supporting the … search warrant." Zadurski subsequently pled no contest to three of his charges and was sentenced to five years of initial confinement and five years of extended supervision.

¶7 This appeal follows, with Zadurski challenging the circuit court's denial of his motion to suppress evidence under the Fourth Amendment. Whether a motion to suppress was correctly decided is a question of constitutional fact. *State v. Iverson*, 2015 WI 101, ¶17, 365 Wis. 2d 302, 871 N.W.2d 661. Thus, our analysis includes two steps. First, we give deference to a circuit court's findings

4

of historical fact, upholding those findings unless they are clearly erroneous. *Id.*, ¶18. Second, we apply the relevant constitutional principals to those facts de novo. *Id.*

¶8     Zadurski argues that the warrant at issue violated his Fourth Amendment rights because it "did not describe the place to be searched with sufficient particularity" and "[t]here was not probable cause to search both apartments in the building." *See State v. Sveum*, 2010 WI 92, ¶¶18, 20, 328 Wis. 2d 369, 787 N.W.2d 317 (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979) and explaining that the Fourth Amendment of the United States Constitution requires that a search warrant be supported by probable cause and include a particular description of the place to be searched as well as the items to be seized). Zadurski relies on *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955), in which the Seventh Circuit held a warrant void as insufficiently particular because it authorized the search of an entire apartment building, including its basement and three stories, instead of identifying a particular unit (or units) of the building in which drug dealing by several individuals had allegedly been witnessed. *Id.* Because the affidavit supporting the search warrant in *Hinton* directed authorities to search "an entire apartment building" without connecting the multiple apartments in the building to the alleged drug sales or dealers, probable cause did not extend to each of the units searched and the warrant was insufficiently particular. *Id.*

¶9     The particularity requirement serves multiple important objectives, among them to ensure against "general searches" and to prevent "seizure of objects other than those described in the warrant." *Sveum*, 328 Wis. 2d 369, ¶28. But what Zadurski misses is that, as *Hinton* itself states, "[t]he validity of the warrant is dependent on the facts shown in the affidavit before the issuing

authority." ***Hinton***, 219 F.2d at 326; *see also **Sveum***, 328 Wis. 2d 369, ¶25. Here, the evidence before the judge who signed the search warrant included evidence of Leighton's control over the entire building, Zadurski dealing illegal drugs out of that building on multiple occasions, and the building's present status as a single-unit residence. Although the affidavit recounted the informant's communication to Muller that the residence "at one time" had two house numbers, the warrant judge had evidence corroborating the informant's characterization of the home as a single-unit residence at the time the warrant was signed: Muller's inclusion of electric company records indicating only one current address, tax records showing only one "viable parcel," and his own observation that the residence looked like a single-family home. This case is not like ***Hinton***, where the search warrant was insufficiently particular because it directed a search of all the apartments in a known multi-apartment building without probable cause supporting a search of each of those apartments. Instead, this case is based on the search of a building reasonably believed to be a single-family home with, as discussed next, probable cause supporting the search.

¶10    Probable cause exists when, "under the totality of the circumstances, given all the facts and circumstances set forth in the affidavit, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" ***Sveum***, 328 Wis. 2d 369, ¶24 (citation omitted). Zadurski has failed to meet the heavy burden of establishing that the warrant judge's determination of probable cause was in error. *See **id.***, ¶25 ("We accord great deference to the warrant-issuing judge's determination of probable cause and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." (Citation omitted.)). Apart from his argument that the building in question consisted of two separate units and that

there was no probable cause connecting him to one or the other, which we have already rejected, he does not suggest that there was insufficient evidence to support probable cause before the warrant judge. Indeed, Muller's affidavit recounting multiple controlled buys from Zadurski in this building by a reliable informant and the rest of the information detailed above is clearly sufficient to provide the warrant judge a substantial basis for concluding that there was a fair probability of finding contraband or evidence in the building.

¶11 This brings us to Zadurski's final argument: that the search warrant was invalid because Muller acted with a reckless disregard for the truth in falsely stating in the affidavit supporting the warrant that the building in question was a "single-family residence" in violation of *Franks* and *Mann*. In *Franks*, the United States Supreme Court held that a defendant can overcome the presumption of validity that attaches to an affidavit supporting a search warrant by demonstrating "deliberate falsehood" or "reckless disregard for the truth" on the part of the affiant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). In *Mann*, where our state supreme court extended the *Franks* principles to permit challenges to criminal complaints, the court explicitly pointed out that *Franks* puts the burden on the defendant to establish that a misstatement (or omission) was made "'deliberately' or 'recklessly'" as opposed to "'negligently' or 'innocently.'" *State v. Mann*, 123 Wis. 2d 375, 385-87, 367 N.W.2d 209 (1985) (citation omitted). If a defendant can establish such motivation on the part of the government affiant, and if a warrant fails to establish probable cause independent of the false statement, evidence resulting from the search must be suppressed. *See Franks*, 438 U.S. at 171; *see also Mann*, 123 Wis. 2d at 388.

¶12 Our supreme court has defined statements made with "reckless disregard for the truth" as ones that were made by an affiant that "in fact

7

entertained serious doubts as to the truth of the allegations or had obvious reasons to doubt the veracity of the allegations." *State v. Anderson*, 138 Wis. 2d 451, 463-64, 406 N.W.2d 398 (1987). Like the circuit court, we conclude that even if Zadurski's allegation is true that the building at issue was a duplex consisting of two separate units rather than a single-unit home,[3] Muller did not act with reckless disregard for the truth in alleging that it was a "single-family residence."

¶13 Based on the testimony at Zadurski's suppression hearing, the circuit court found as a matter of fact that Muller's efforts to ascertain the nature of the building included investigation into the electric company's account for the residence and tax records as stated in his affidavit—both of which indicated that 409 was the single address for the property. With respect to Zadurski's argument based on Leighton's testimony that both house numbers "409" and "411" were affixed to the residence, the court referred to testimony from both Muller and Zadurski's private investigator's testimony suggesting that one could not clearly see the front of the home when driving by on the street, because it "does not sit right on top of the road" and there are trees. The court stated that it "would not expect [Muller] to come upon the premises and walk around the house," which

---

[3] In its decision denying Zadurski's motion to suppress, the circuit court noted Muller's testimony that the owner of the house on West Market Street told him that he rented the entire house to only Jillian Leighton, the lack of written leases for either Zadurski (who Leighton testified lived upstairs with her) or the downstairs tenant despite Leighton's testimony that both men rented from her, and the police report indicating that the landlord said after he inherited the house, "411 West Market Street was added for the second floor" but that Leighton was "the main renter and was in control of the residence." Also relevant to the question of whether the house consisted of a single unit or two separate ones (but not to the question of Muller's culpability for any falsehood or the adequacy of the search warrant) is the fact that police found Leighton's children on the first floor of the house and "a children's bedroom with an open door way to stairs for the second floor." Again, because we conclude that Muller's affidavit was not the product of a deliberate or reckless disregard for the truth, we need not seek a finding from the circuit court as to whether the house was or was not a duplex.

could have led to seeing both house numbers and an additional water meter attached to the house, because, as Muller explained, that could have compromised the investigation.

¶14 Zadurski does not argue that these facts are clearly erroneous, but only that Muller should have done more—namely, investigate water bills and municipal tax records and notice that there were two mailboxes for the property across the street.[4] He does not establish that, despite the investigation Muller did to put to rest any concern that the house was still a duplex after the informant told him that "at one time" it had two house numbers, Muller still "entertained serious doubts as to the truth of the allegation[] or had obvious reasons to doubt the veracity of the allegation[]" that the building in question was presently a single-unit residence. *See id.* at 463. Thus, Zadurski has not established a ***Franks-Mann*** violation.

¶15 Because, as discussed above, the search warrant was sufficiently particular and supported by probable cause and because Zadurski has failed to establish that any false information in the affidavit supporting the search warrant was the product of a reckless disregard for the truth, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] With respect to the mailboxes, the circuit court indicated that in "the picture of the mailboxes [there is not] one designated as 409, and the one that presumably is 411 is actually scratched out … the 4 and the 1 … are scratched on the picture of that particular mailbox."